Patricia M. VIDRA, et al.

v.

Roscoe EGGER, et al.

Civ. A. No. 82–2460.

United States District Court,
E.D. Pennsylvania.

Dec. 7, 1982.

On Motion for Leave to File
Second Amended Complaint
Sept. 6, 1983.

Stephen F. Gold, Philadelphia, Pa., for plaintiffs.

Robert L. Gordon, U.S. Dept. of Justice, Washington, D.C., for defendants Egger, Rideoutte.

Joel M. Ressler, Deputy Atty. Gen., Com. of Pa., Harrisburg, Pa., for defendant O'Bannon.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

Section 6402 of the Internal Revenue Code deals with refunds to taxpayers of amounts paid to IRS in excess of tax due. Subsection (a) provides the general rule that the balance of the overpayment is to be refunded to the taxpayer. Subsection (b) provides for optional credit of such overpayments against estimates of future taxes. In 1981, subsection (c) was added, in conjunction with amendments to § 6305 of the Code. Section 6402(c) provides:

> "(c) *Offsets of past-due support against overpayments.*—The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support (as defined in § 464(c) of the Social Security Act) owed by that person of which the Secretary has been notified by a state in accordance with § 464 of the Social Security Act. The Secretary shall remit the amount by which the overpayment is so reduced to the state to which support has been assigned and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the state...."

Illustrative of the operation of these provisions is the following example: Under an Aid-to-Families-with-Dependent-Children Program (AFDC), welfare benefits are paid to a dependent child. The father is in arrears on his support obligations toward that child. The state has a claim against the father for reimbursement (the federal government's claims against the father having previously been automatically assigned to the state). The father has overpaid his income tax to IRS, and is due a refund. Instead of making the refund to

the father-taxpayer, IRS pays to the state the amount which would otherwise represent the refund, and notifies the father-taxpayer of the corresponding reduction in his liability to the state.

Plaintiffs, four married couples who filed joint income tax returns reflecting overpayments of income taxes, brought this action to challenge the new procedure. As to each couple, it is claimed that only one of the spouses had an overdue support liability to the state, and that the overpayments to IRS were made in whole or in part by the other spouse. Plaintiffs contend that the statutory "intercept" procedure violates their constitutional right to due process of law, in that (a) monies due in whole or in part to one spouse are being seized to satisfy obligations of the other spouse, and (b) in any event, they are entitled to notice and an opportunity to be heard, before being deprived of the property represented by the refund claims.

Plaintiffs seek the following relief: (1) a declaratory judgment to the effect that the statutory "intercept" procedure violates due process of law; (2) a declaratory judgment to the effect that the defendant IRS officials are illegally withholding refunds due the wife-plaintiffs; (3) an injunction restraining the defendants from continuing to withhold refunds due the wife-plaintiffs; (4) counsel fees and expenses; and (5) general relief.

Plaintiffs' contentions are indeed interesting, and seemingly non-frivolous, but three related statutory provisions combine to bar relief in this action.

A federal district court has no power to enter declaratory judgment "with respect to federal taxes", 28 U.S.C. § 2201. And the Tax Injunction Act similarly precludes "suit for the purpose of restraining the assessment or collection of any tax..." 26 U.S.C. § 7421(a). Viewed together, these statutes plainly, in my view, prohibit declaratory judgments concerning what IRS should do with tax refunds, and injunctions directing the payment of tax refunds (or, more accurately, restraining IRS from failing to pay refunds due). Congress has exhibited an unmistakable purpose to protect "the government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement interference," *Bob Jones University v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 2045, 40 L.Ed.2d 496 (1974) and "to require that the legal right to the disputed sums be determined in a suit for refund." *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). The presence of constitutional issues is immaterial, *Commissioner v. Americans United, Inc.,* 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974).

The essential thrust of plaintiffs' Complaint is that they overpaid their taxes and are entitled to a refund from IRS. Plaintiffs may indeed be correct in anticipating that IRS would seek to justify denial of the claimed refunds by the actions taken pursuant to the 26 U.S.C. § 6402(c) intercept arrangement, but the validity of that defense can properly be examined in a refund suit.

In short, as I understand the matter, plaintiffs' sole remedy is a suit for refund. But on the present state of the record, that avenue of relief is not yet available to them. 26 U.S.C. § 7422(a) provides:

"(a) *No suit prior to filing claim for refund.*—No suit or proceeding shall be maintained in any court for the recovery of any Internal Revenue tax alleged to have been erroneously or illegally assessed or collected ... or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof."

This statute "establishes the undisputed proposition that failure to make a timely refund claim bars any action for such refund", *Kreiger v. U.S.,* 539 F.2d 317, 320 (3d Cir.1976). Here again, the assertion of constitutional claims does not affect the

result. *Kent v. Northern California Regional Office*, 497 F.2d 1325 (9th Cir.1974). It is undisputed that none of the plaintiffs has complied with this condition precedent.

Plaintiffs seek to excuse compliance with this requirement because the IRS has consistently referred them to 45 C.F.R. § 303.-72(g)(1) ("upon receipt of a complaint from an individual concerning a tax refund which has been offset, the state … shall take steps to investigate the complaint to determine its validity"), and has advised them to pursue the matter with the Pennsylvania Department of Public Welfare.

It seems reasonable to construe these advices as covering issues (if any) concerning the existence and amount of liability on the part of the husband-taxpayers to DPW for support payments. Since the period within which plaintiffs may file refund claims has not yet expired, and since it is not entirely clear that refund claims based on the contentions asserted in this litigation would inevitably be rejected, the present lawsuit, to the extent that it can be regarded as a suit for refund of income taxes, is premature.

■ Thus, all of plaintiffs' claims against the federal defendants will be dismissed, without prejudice. Plaintiffs have also named as a defendant the Secretary of the Pennsylvania Department of Public Welfare, Helen O'Bannon. She has filed a motion which challenges venue, and seeks a transfer of the action to the Middle District of Pennsylvania, and has also moved to dismiss, on the subject-matter jurisdiction grounds asserted by the federal defendants, and also on Eleventh Amendment grounds. I conclude that venue in this district is proper (the Pennsylvania Department of Welfare maintains a substantial regional office in Philadelphia, and the claims arose in this district). To the extent that plaintiffs' Complaint seeks to hold the defendant O'Bannon liable to repay to them all or part of the offsets already received the claims are barred by the Eleventh Amendment. To the extent that plaintiffs' Complaint seeks to invalidate the statutory intercept procedure, subject-matter jurisdiction is lacking, for the reasons discussed above in connection with the federal defendants. All that remain, then, are plaintiffs' claims for injunctive and declaratory relief asserting that the state defendant failed to make reasonable efforts to collect the support obligations by means other than offset, before invoking the statutory intercept procedure. Plaintiffs are at liberty to pursue those claims in this action, if they so desire.

## ON MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

■ This Court's Memorandum and Order of December 7, 1982, held that plaintiff's sole remedy against the federal defendants would be a suit for refund, but that such a suit cannot be maintained until an administrative claim has been filed and rejected, 26 U.S.C. § 7422(a). The named plaintiff has now exhausted her administrative refund remedies, and has filed a motion for leave to file a second amended complaint.

While this Court's Memorandum and Order dismissed the claims against the federal defendants without prejudice, and contemplated the possibility of an amended pleading after the jurisdictional bar had been removed, the amended pleading plaintiff now proposes to file would merely add further confusion to an already confused record. Accordingly, the pending motion will be denied, without prejudice.

I perceive the following problems in this case. The original Complaint (as amended July 7, 1982) named as plaintiffs eight individuals, four women and their husbands, all of whom sought to maintain the action on behalf of a class of similarly situated persons. The gist of the plaintiffs' allegations was that tax refunds due the wife-plaintiffs had been improperly diverted to the Pennsylvania Department of Welfare in partial satisfaction of claimed arrearages in the husband-plaintiffs' support obligations. Plaintiffs sought injunctive, declaratory and other relief against both the various federal defendants, and the various state defendants. As a consequence of this

Court's earlier ruling, referred to above, the action was dismissed without prejudice as to all federal defendants, and certain claims against the state defendants were also dismissed; but the action was permitted to continue against the state defendants in other respects.

The proposed second amended complaint names as plaintiff only Patricia M. Vidra, one of the original wife-plaintiffs, acting on behalf of herself and all others similarly situated. Presumably, this means that all of the other plaintiffs have abandoned the action altogether, but that aspect of the matter plainly needs clarification. For example, Mrs. Vidra continues to assert that her husband's support arrearages have been improperly calculated—a matter about which, it would seem, only her husband would have standing to complain.

The second amended complaint re-asserts claims for injunctive and declaratory relief against the federal defendants, notwithstanding this Court's earlier determination that such claims are precluded by statute.

And finally, since plaintiff is suing for a tax refund, it would seem that the appropriate federal defendant would be the United States Government itself, rather than officials of the Internal Revenue Service.

Plaintiffs will be afforded a further opportunity to file a single amended pleading (preferably one which adheres more closely to federal pleading requirements, rather than to state-law fact pleading) clearly setting forth, in separate counts, just what claims are being asserted against what defendants. Any such pleading should, of course, be governed by this Court's earlier rulings, whether or not plaintiffs concur in their correctness.